```
IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
```
_____

DAVID WHITLOCK,

                Plaintiff,        1:17-CV-00948-MAT

    -v-                              **DECISION AND ORDER**

NANCY A. BERRYHILL, Acting
Commissioner OF Social Security,

                Defendant.

_____

## INTRODUCTION

David Whitlock ("Plaintiff"), represented by counsel, brings this action under Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant"), denying his application for disability insurance benefits ("DIB"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is granted to the extent that the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order and Defendant's motion is denied.

## PROCEDURAL BACKGROUND

On April 11, 2014, Plaintiff protectively filed for DIB, alleging disability beginning December 9, 2009, due to lumbar radiculopathy; vertigo; depression with anxiety; headaches;

insomnia; chronic pain syndrome; sleep disturbance; and muscle tremors. Administrative Transcript ("T.") 54. The claim was initially denied on May 16, 2014, and Plaintiff timely requested a hearing. T. 62-70. On June 8, 2016, a video hearing was conducted in Kansas City, Missouri, by administrative law judge ("ALJ") P. H. Jung. T. 27-45. Plaintiff appeared with his attorney via video conference and testified. An impartial vocational expert ("VE") also testified.

The ALJ issued an unfavorable decision on June 17, 2016. T. 7-18. Plaintiff timely requested review of the ALJ's decision by the Appeals' Council. T. 46-47. The Appeals Council denied Plaintiff's request for review on August 8, 2017, making the ALJ's decision the final decision of the Commissioner. T. 1-6. Plaintiff then timely commenced this action.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2013. T. 12.

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date through his date last insured. T. 12.

At step two, the ALJ determined that Plaintiff suffered from the "severe" impairments of: degenerative disc disease of the lumbar spine; depression; anxiety disorder; headaches; insomnia; and obesity. T. 12. The ALJ made no finding regarding the severity of Plaintiff's remaining alleged impairments of vertigo, chronic pain syndrome, and muscle tremors. *See* T. 54.

At step three, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 12.

Before proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to: "lift/carry 10 pounds occasionally and 10 pounds less than frequently"; stand and/or walk two hours per eight hours; sit six hours per eight hours; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; never crawl; avoid all exposure to hazards, vibration, machinery, or heights; avoid frequent exposure to extreme cold and heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation; tolerate moderate noise level three, like a business office; perform simple, repetitive, and routine tasks; and engage in frequent interaction with the public. T. 14.

At step four, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. T. 16. At step five, the ALJ

relied on the VE's testimony to find that, taking into account Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including the representative occupations of document scanner, circuit board assembler, and packager. T. 17. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. T. 18.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of

review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends that remand of this matter is warranted because: (1) the ALJ failed to determine whether Plaintiff's impairment of chronic pain syndrome was severe; (2) the ALJ failed to afford "controlling weight," or any other weight at all, to the opinions of any of Plaintiff's treating physicians; (3) the ALJ erred by improperly discrediting Plaintiff's complaints of pain; and (4) the ALJ failed to consider listing 1.04 (Disorders of the Spine) in determining whether Plaintiff's impairments met a listed impairment. For the reasons discussed below, the Court finds the ALJ's decision is not supported by substantial evidence and remand of this matter for further administrative proceedings is required.

**I. The ALJ's RFC Finding is Unsupported by Substantial Evidence**

Plaintiff argues the ALJ erred by not attributing any weight to the opinions of any of Plaintiff's treating sources. As further described below, the Court finds this argument is misplaced, inasmuch as the record contains no actual medical opinions from Plaintiff's treating sources. However, Plaintiff has identified an equally serious error in the ALJ's determination - namely, the ALJ's failure to attempt to obtain a retrospective medical opinion

5

from one or more of Plaintiff's treating sources, after the State agency consultant determined a consultative examination could not be ordered, due to Plaintiff's last insured date already passed. T. 57. With no examining opinion or functional assessment existing in the record, the ALJ erroneously relied upon his own lay interpretation of the medical record and Plaintiff's testimony to develop the RFC finding. Accordingly, the Court finds that remand is warranted.

## A. The Medical Record

On May 16, 2014, non-examining State agency consultant Dr. L. Hardin-Otero opined the record contained "insufficient evidence to rate [Plaintiff's] claim physically to [the date last insured]." T. 56. On the same day, non-examining State agency psychological consultant Dr. M. Totin opined there was insufficient evidence through the date last insured to substantiate Plaintiff's alleged psychiatric impairments. T. 57. The State determination report further noted that a consultative examination could not be ordered for a date last insured in the past and there was no indication there was an opinion from any source in the record. T. 57.

The medical record is indeed sparse, including only five separate treatment records from Dent Neurologic Institute ("Dent") during the relevant period of December 9, 2009 through December 31, 2013. T. 188-205. These five records consist of three psychiatric treatment sessions addressing Plaintiff's depression (T. 192-202),

6

and two primary visits addressing Plaintiff's lumbar radiculopathy and associated pain (T. 188-91; 203-05). Two of the five records document Plaintiff's frustration with his inability to find an orthopaedic surgeon or specialist who will accept his insurance. T. 192, 199. At the hearing, Plaintiff testified that prior to his treatment at Dent, he treated with physical therapist and chiropractor, Dr. Brian Vetter. T. 33. Plaintiff testified that his primary care doctor and Dr. Vetter referred him to Dent. *Id*. However, the record contains no treatment records from either Dr. Vetter or Plaintiff's primary care physician, nor is there any indication that the ALJ attempted to obtain such records.

In a treatment note summary from Dent dated November 15, 2012, treating physician's assistant ("PA") Casey Pettit noted Plaintiff had an accident where he stepped in a hole "which ended up causing severe hip problems and as a result[,] lumbar radiculopathy. He walks with a severe limp and a cane and is unable to work." T. 203. At that visit, Plaintiff reported to PA Pettit that his "hip is throbbing and his spine feels like it is being crushed and pulled between 2 devices." *Id*. PA Pettit noted Plaintiff appeared to be in "excruciating pain and unfortunately he is starting to walk hunched over due to compensation in his hip." *Id*.

The record from the relevant time period also includes: an MRI report from December 1, 2011, showing degenerative changes of the

7

intervertebral discs at L4-5 and L5-S1 levels (T. 212-13); a sleep study (T. 214-17); an EEG (T. 206-09); and a brain MRI (T. 210-11).

Treatment records subsequent to Plaintiff's last insured date of December 31, 2013 consist of eight visits to Dent, three of which were psychiatric treatment sessions, and five of which were primary visits addressing Plaintiff's pain and insomnia. T. 220-44.

### B. The ALJ's Decision

In his decision, the ALJ noted the record contained "very limited medical evidence" overall for the relevant period. T. 15. He noted the medical evidence of record began in December 2011, two years after Plaintiff allegedly sustained his hip injury. *Id*. The ALJ noted that for "opinion evidence," he gave "little weight to the assessment of State agency psychological consultant M. Totin that there is insufficient evidence to decide this matter through the date last insured." T. 16 referring to T. 57.

Despite finding the record had minimal medical evidence and that the only "opinion evidence" was a non-examining opinion stating the record contained insufficient evidence, the ALJ nonetheless determined he had sufficient evidence to develop a somewhat restrictive RFC finding. In the decision, the ALJ stated that the RFC assessment was supported by the objective medical evidence of record, including treatment notes, clinical findings, medical imaging studies, and physical and mental status examinations. T. 16. The Court disagrees with this RFC finding.

### C. The ALJ's Failure to Attempt to Obtain a Medical Opinion from Plaintiff's Treating Source(s) Warrants Remand

Pursuant to Social Security Ruling ("SSR") 83-10, the RFC is defined as "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s)." SSR 83-10, 1983 WL 31251, at *7 (S.S.A. 1983). "As explicitly stated in the regulations, [the] RFC is a medical assessment; therefore, the ALJ is precluded from making his assessment without some expert medical testimony or other medical evidence to support his decision." *Gray v. Chater*, 903 F. Supp. 293, 301 (N.D.N.Y. 1995).

Where the record is sufficient to make an informed decision, an ALJ is not required to obtain a medical opinion; however, an ALJ is not qualified to assess a claimant's RFC based on bare medical findings alone. *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citing *Daily v. Astrue*, No. 09-CV-0099(A)(M), 2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010)); *Gross v. Astrue*, No. 12-CV-6207P, 2014 WL 1806779, at *18 (W.D.N.Y. May 7, 2014). "Accordingly, '[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities . . .[,] [the ALJ] may not make the connection himself.'" *Wilson*, 2015 WL 1003933, at *21 (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008));

9

see also *Covey v. Colvin*, 204 F. Supp. 497, 506-07 (W.D.N.Y. 2016) (an ALJ is required to "request additional evidence if the administrative record does not contain sufficient evidence to make a fair determination") (quoting *Ubiles v. Astrue*, No. 11-CV-6340(MAT), 2012 WL 2572772, at *10 (W.D.N.Y. July 2, 2010)).

While the Commissioner's regulations provide that a claimant is responsible for furnishing evidence upon which to base an RFC assessment, an ALJ is not free to make a finding without first gathering additional information to adequately support his or her decision. On the contrary, "the ALJ generally has an affirmative obligation to develop the administrative record [before making a disability determination.] This duty exists even when the claimant is represented by counsel." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (internal citation omitted). Moreover, the regulations make clear that an ALJ is responsible for "making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(a)(3).

In his decision, the ALJ acknowledged there was "very little medical evidence from the relevant period and in the record overall." T. 15. However, the ALJ did not fulfill his obligation to develop the record by seeking an assessment of Plaintiff's functional limitations from Plaintiff's treating sources, but instead relied on his own assessment of Plaintiff's functional

capacity, based presumably on Plaintiff's testimony and treatment notes. This was error.

The Court further notes that the record contains no indication the ALJ attempted to obtain the medical records from Plaintiff's treating physician or treating physical therapist and chiropractor, Dr. Vetter. This failure compounds the ALJ's error.

The Court finds the record devoid of any means by which the ALJ could reasonably reach a finding based on substantial evidence. Although the record contains some treatment notes relating to Plaintiff's degenerative disc disease of the lumbar spine, depression, anxiety disorder, headaches, and insomnia, it does not contain medical assessments as to the severity of these conditions, nor an assessment of how they might impact Plaintiff's functional capacity. While treatment records may be used to support a conclusion based on medical findings and acceptable medical opinions, it is error for an ALJ to substitute his or her own interpretation of the medical record for the opinions of treating or examining medical professionals. *See Dennis v. Colvin*, 195 F. Supp. 3d 469, 473 (W.D.N.Y. 2016) (remand required where the ALJ erroneously evaluated treatment notes and diagnostic testing to support the RFC finding, in the absence of a relevant medical opinion); *Haynes v. Berryhill*, No. 1:17-cv-00081-MAT, 2018 WL 3544944, at *4-5 (W.D.N.Y. July 24, 2018) (remanding where the ALJ based the RFC finding on her own assessment of the claimant's

treatment notes, rather than obtaining an assessment from the claimant's doctor).

As a result of the ALJ's failure to appropriately develop the record, remand is warranted. *See McCarthy v. Colvin*, 66 F. Supp. 3d 315, 322 (W.D.N.Y. 2014) ("The lay evaluation of an ALJ is not sufficient evidence of the claimant's work capacity; an explanation of the claimant's functional capacity from a doctor is required.") (quoting *Zorilla v. Chater*, 915 F. Supp. 662, 666-67 (S.D.N.Y. 1996)). Furthermore, it is well-established that an ALJ is not "permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (internal citations omitted).

On remand, the ALJ is directed to attempt to obtain a retrospective opinion from Plaintiff's treating physician concerning his functional capacity during the relevant period, to assist in making a substantially supported RFC finding.

**II. Plaintiff's Remaining Arguments**

Finding remand necessary for the reasons explained above, the Court need not and does not reach Plaintiff's remaining arguments concerning Plaintiff's chronic pain syndrome, Plaintiff's complaints of pain, and the ALJ's consideration of Listing 1.04.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Doc. 10) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Commissioner's opposing motion for judgement on the pleadings (Doc. 13) is denied. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/ Michael A. Telesca**
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:   October 5, 2018
         Rochester, New York